UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
IN RE:                                             )
                                                   )
BOSTON CEI, LLC                          )          Chapter 11
                                                   )          Case No. 10-16502-JNF
         Debtor                                )
_____)


**MOTION BY DEBTOR, BOSTON CEI, LLC, FOR AUTHORIZATION OF (1) USE OF CASH COLLATERAL, (2) THE GRANTING OF REPLACEMENT LIENS, AND (3) <u>ADDITIONAL RELIEF</u>**

Pursuant to Section 105 and 363 of Title 11 of the United States Code, Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 and MLBR 4001-2, BOSTON CEI, LLC, the above-captioned debtor and debtor-in-possession in this proceeding (the "Debtor"), hereby move this Honorable Court for entry of an order authorizing the use of cash collateral generated by sales and operations (the "Cash Collateral") to maintain the value of the property in order to reorganize.  Pursuant to this motion, the Debtor respectfully requests the entry of an order:

(1) Authorizing use of Cash Collateral in the ordinary course of business;

(2) Authorizing payments of 60% of the weekly net income, up to $7,250.00/week, as indicated in Exhibit A attached hereto, to first lienholder, TD Bank ("TD") to provide adequate protection for the use of Cash Collateral; and

(3) Granting replacement liens to TD to the extent described in this motion, to provide adequate protection for the use of Cash Collateral.

1

## I. Factual Background

## II.

### A. General

1. On June 15, 2010 (the "Petition Date") the Debtor filed a voluntary for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Court").

2. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

### B. Debtor's Business

3. The Debtor is a specialty contracting company founded in September 1999. The Debtor is engaged in the business of managing and operating a demolition, saw-cutting, selective concrete flatwork/formwork and excavation. Debtor works throughout New England and its business make up is approximately 90% commercial/institutional and 10% residential

4. Debtor currently has approximately 38 field laborers and 7 office administrative staff and approximately 12 on-site jobs in process on the Petition Date.

5. Debtor currently has a loan with TD as further described below. In addition, Debtor has a number of secured asset loans with various auto and equipment financing companies, (Ford Credit, GE Capital, e.g.). These loans are attached to Debtor's Budget. Debtor will be making adequate protection payments on all these **non-TD Bank** loans amortized over 4 years at 4%. There is also sufficient equity in all of the autos & equipment and taken as a group there is an approximate 50% loan to value ratio.

**C.    TD  Loan**

5.    In or around, July 2, 2008, TD made a Loan to the Debtor in the original principal amount of $4,142,000.00.   This loan was evidenced by a "Revolving Line Note" of $1,000,000.00, "Term Note A" of $418,000.00, "Term Note B" $1,109,000.00 and a "Real Estate Mortgage Note of "$1,615,000.00".

6.    As of this date there remained a $1,000,000.00 balance on the Revolving Line Note, approximately $222,000.00 balance on the Term Note A, approximately $922,000.00 balance on Term Note B and approximately $1,563,000.00 on the cross-collateralized Real Estate Mortgage Note[1].  Debtor reserves the right to object to all claims and amounts of TD Bank.

6.    TD claims a first-priority security interest in all of Debtor's equipment, inventory, and accounts, including Debtor's cash[2].

7.    Debtor believes the liquidation value of all the equipment is approximately $1,000,000.00[3]

8.    Debtor asserts that TD has an unperfected security in certain assets of the Debtor (vehicles) and therefore its claim is undersecured.

10.    Debtor  proposes a $5,012.00 monthly payment on the Term A Note.  This note is secured by certain equipment and vehicles of the Debtor.  This payment reflects a principle of $222,000[4] at 4% interest amortized over 48-months.

---

[1] This Note is for property owned by IAG, LLC affiliate of Debtor owned by Debtor's principals, Peter Banks (50%) and Brian Caffery (50%), subject to a pledge.
[2] Debtor reserves the right to object to the extent, amount, validity and priority of the TD lien.
[3] This amount is based on the Debtor's information and belief and according to a TD appraisal.
[4] Debtor reserves the right to object to this amount.

3

**D.     Events Precipitating the Bankruptcy Filings**

9.      In 2008 Debtor earned over $10,000,000 in gross revenues. In 2009 that number dropped dramatically to approximately $7,760,000.00. This drop in revenue was precipitated by the general overall downturn in the economy that hit the construction companies particularly hard leading to over 27% unemployment in the construction industry.

10.     Beginning in 2008 and particularly in 2009, construction work availability was severely diminished and any work available was drastically below margins as a result of the competiveness of all bids in the marketplace for similar work.

11.     In addition, the value of real estate owned by Debtor's affiliate and equipment owned by Debtor diminished significantly in value, which prohibited Debtor from collateralizing the business and reduced its borrowing base.

12.     In the fall of 2009, Debtor's secured lender, TD Bank, issued default letters and put the Debtor into its workout department in April 2010.

13.     In 2009 revenue collection by the Debtor slowed greatly and the stream of revenue dropped off due to retainage being held longer by job owners. In addition, the Debtor incurred several unprofitable jobs, and due to the economic recession, especially in the construction industry it was tougher for the Debtor to recover with good jobs because of the lower margins.

14.     Due to the lack of cash flow, and pressure from TD, it became increasingly difficult for Debtor to operate.

## II.    REQUESTED USE OF CASH COLLATERAL AND OFFER OF ADEQUATE PROTECTION

### A.    Use of Cash Collateral

12.    The Debtor requires the use of the Cash Collateral in order to fund the Debtor's ongoing operations pursuant to 11 U.S.C. 363(c)(2)(A). Absent the use of the Cash Collateral Debtor will be unable to pay the usual and ordinary operating expenses of the business. The use of the Cash Collateral is therefore necessary to preserve the value of the Debtor's estate.

13. The Debtor requests authority to utilize, substantially in accordance with the 13-week Budget (attached as Exhibit A), Cash Collateral to fund its operations.

14.    The Debtor proposes to adequately protect TD for the use of any Cash Collateral as follows:

    a.    by granting a replacement lien on the personal property to the extent the lien is properly perfected in pre-petition collateral;

    b.    by making weekly payments of 60% of net cash income up to $7,250.00;

    c.    by maintaining insurance on Debtor's personal property and by paying all post-petition vendor and other administrative costs on a timely basis; and

    d.    by operating their business and pursuing their reorganization in this case to maintain both their going concern and the value of TD's collateral. Debtor believes that its assets are worth far more on a going concern basis than in a hypothetical liquidation of $1,000,000.00. The business grosses approximately $575,000.00 per month.

15.    Approval of this Motion and the use of Cash Collateral on the terms identified in this Motion is in the best interest of the Debtor, the Debtor's estate and their creditors.

16. Absent the use of the Cash Collateral, Debtor would be unable to meet payroll and would be forced to lay-off their work force and to suspend operations immediately. Without the use of Cash Collateral, Debtor will be forced to commence liquidation proceedings, which would result in a significantly less dividend, or no dividend at all, to the unsecured creditors. The use of cash collateral will allow the Debtor to preserve the going-concern value.

**C.    Adequate Protection**

17. 11 U.S.C. Section 363 of the Code provides that a party with an interest in property proposed to be used, sold, or leased by the debtor may receive adequate protection of such interest before the debtor may use, sell or lease such property. The Debtor proposes to provide adequate protection to TD through monthly cash payments, through granting of post-petition liens on the Debtor's personal property, and through the use of the Cash Collateral to maintain the going concern value of the Debtor's property (consisting entirely of machines, motor vehicles, tools, fixtures, equipment and inventory).

18. Section 361 of the Code provides that when adequate protection is required under Section 363 of the Code such adequate protection may be provided by –

> "(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under Section 362 of this title, use, sale or lease under section 363 of this title...
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; or…"

19. Debtors propose to use the Cash Collateral in order to maintain and operate the business. As such, Debtor proposes a weekly payment of 60% of net cash up to $7,250.00 to

TD as well as the granting of a replacement lien on the personal property, as adequate protection of TD's claim.

20. What constitutes adequate protection varies with the facts and circumstance of each particular case. Bankruptcy courts are vested with discretion to determine the form of protection that best reflects the spirit and intent of Section 361. *See In re Lackow Brothers, Inc.*, 10 B.R. 717, 720 (Bankr. S.D. Fla. 1981); *In re Family Investments, Inc.* 8 B.R. 572 (Bankr. W.D. Ky. 1981).

21. Regardless of its form, the entitlement to and measure of the adequate protection required is always determined by the extent of the diminution of value, if any, in the secured creditor's collateral, during the course of the bankruptcy case. *See In re First South Savings Assoc.* 820 F.2d 700, 710 (5th Cir. 1987).

22. "It is intended by the Bankruptcy Code only to assure that a secured creditor, during the pendency of a bankruptcy case, does not suffer a loss in the value of its interest in property of the bankruptcy estate." *In re Markos Gurnee Partnership* 252 B.R. 712, 716 ( Bankr. N.D. Ill. 1997). *See also United Savings Association of Texas v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365 (1988).

23. As adequate protection, Debtor proposes to provide weekly cash payments of 60% of net cash income, up to $7,250.00, proposes to grant TD a replacement lien on the personal property of the estate against which TD held a lien as of the Petition Date, and proposes to maintain and operate the business as a going concern, thus maintaining the personal property's value. The replacement lien shall maintain the same priority, validity and enforceability as TD's pre-petition lien. The replacement lien shall be recognized only to the extent of the diminution

in value of TD's pre-petition collateral after the Petition Date resulting from the Debtors' use of the Cash Collateral during the bankruptcy case.

24. The Cash Collateral will be used as described in Debtor's budget attached. As such, the Cash Collateral is being used to preserve and maintain the Debtor's ongoing business. The Debtor's use of its income to operate and maintain the business constitutes additional adequate protection. *See In re McCann*, 140 B.R. 926, 929 (Bankr. D. Mass. 1992) *citing with approval In re Prichard Plaza, L.P.* 84 B.R. 298 (Bankr. D. Mass. 1988).

25. In addition, the Debtor's property is insured at replacement cost. This provides further adequate protection to TD.

26. For all the foregoing reasons, TD's collateral is not diminishing in value and the use of the Cash Collateral is therefore warranted.

**D. Payment of Debtors' Counsel Fees**

27. Debtor seeks to carve-out from the use of cash up to $26,000.00 for Debtor's counsel fees[5]. Payments would be made in installments $2,000.00 per week.

28. In addition, Debtor seeks to carve-out from the use of cash amounts to pay chapter 11 U.S. Trustee quarterly fees.

29. "A Debtor may use cash collateral to pay professional fees if the secured party is adequately protected…" *In Matter for WBM Company, Inc.,* (Neb. 2007) *See also, Security Leasing Partners L.P. v. ProAlert, LLC (In re ProAlert, LLC)* 314 B.R. 436 (9th Cir. BAP 2004).

30. "If the underlying collateral is not declining in value, the additional cash collateral may be used by the debtor to pay administrative expenses as well as to maintain and improve the underlying collateral." *In re Wrecclesham,* 221 at 981, *see In re Addison Properties Limited Partnership* 185 B.R. 766, 784 (Bankr. N.D. Ill 1995).

---

[5] All fees are subject to court approval.

8

31.     As previously demonstrated, TD is adequately protected with monthly cash payments, replacement liens, insurance, and maintenance and operation of the business. Therefore, as TD is adequately protected, Debtor may use cash collateral to pay their administrative costs.

32.     In addition, pursuant to 11 U.S.C. § 506(c) allow Debtor to pay administrative fees, including Debtor's counsel fees, from TD's collateral that are reasonable costs and expenses of preserving or disposing of, such property.

33.     Debtor believes that its reorganization prospects are excellent for many reasons, including primarily the availability of unencumbered assets as a source of DIP financing and the prospects off several new and profitable contracts this summer and fall.

### III.     NOTICE

34.     The Debtor has served this Motion on (a) all known secured creditors; (b) the Office of the United States Trustee; (c) the Debtors' 20 Largest Unsecured Creditors; and (d) all parties who have filed a notice of appearance and request for notices in this proceeding.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order:

a. Approving the notice of this motion as described above;

b. Authorizing the Debtor to use Cash Collateral on a continuing basis;

c. Granting TD a replacement lien in accordance with the terms of this motion;

d. Authorizing the Debtor to use the Cash Collateral to pay Debtor's counsel fees and charge the collateral pursuant to 11 U.S.C. § 506(c) and 11 U.S.C. § 363;

e. Scheduling additional consideration of the use of the Cash Collateral following the expiration of the authorization in this motion; and

  f. Granting such other relief as is just and proper.

                Respectfully submitted
                The Debtor,
                By their Attorney,


                /s/ John M. McAuliffe
                John M. McAuliffe, Esq.
                McAuliffe & Associates, P.C.
                430 Lexington Street
                Newton, MA 02466
                (617) 558-6889
                BBO# 555109

Dated:  June 15, 2010

# EXHIBIT A

Case 10-16502    Doc 5    Filed 06/15/10    Entered 06/15/10 15:55:11    Desc Main
Document    Page 11 of 14

| | 06/18/10 | 06/25/10 | 07/02/10 | 07/09/10 | 07/16/10 | 07/23/10 | 07/30/10 | 08/06/10 | 08/13/10 | 08/20/10 | 08/27/10 | 09/03/10 | 09/10/10 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Receipts - Unbilled | | | 45,000 | | 22,205 | 72,396 | | 108,412 | 161,553 | 124,561 | 122,500 | 125,000 | 117,290 | 898,916 |
| Cash Receipts-billed | 92,480 | 149,083 | 46,533 | 140,807 | 97,795 | 29,218 | 96,047 | 14,088 | 948 | 10,939 | | | 7,710 | 685,648 |
| Total cash receipts | 92,480 | 149,083 | 91,533 | 140,807 | 120,000 | 101,614 | 96,047 | 122,500 | 162,500 | 135,500 | 122,500 | 125,000 | 125,000 | 1,584,564 |
| | | | | | | | | | | | | | | |
| **Direct Costs** | | | | | | | | | | | | | | |
| Direct labor | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 41,025 | 533,325 |
| Payroll Taxes | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 3,692 | 47,999 |
| Materials | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 8,475 | 110,175 |
| Disposal | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 104,000 |
| Insurance - WC | | | | 14,976 | | | | | 14,976 | | | | 14,976 | 44,928 |
| Insurance -GL | | 11,953 | | | | 11,953 | | | | 11,953 | | | | 35,859 |
| Insurance - Equipment | | | | | 1,620 | | | | 1,620 | | | | 1,620 | 4,860 |
| Insurance - Vehicles | | 5,417 | | | | 5,417 | | | | 5,417 | | | | 16,251 |
| Employee benefits | | 18,000 | | 18,000 | | | | 18,000 | | | | 18,000 | | 72,000 |
| Fuel - onroad | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 58,500 |
| Fuel - offroad | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 16,250 |
| Repairs & Maintenance | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 27,300 |
| Subcontractors/leased labor | | 9,000 | | 9,000 | | | | 10,000 | | 5,000 | 5,000 | | 4,000 | 42,000 |
| | | | | | | | | | | | | | | |
| Total Direct Cost | 69,042 | 113,412 | 69,042 | 111,018 | 82,615 | 74,459 | 69,042 | 97,042 | 85,638 | 91,412 | 74,042 | 87,042 | 89,638 | 1,113,447 |
| | | | | | | | | | | | | | | |
| **Selling, General & adminstrative** | | | | | | | | | | | | | | |
| Office supplies & expenses | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| Advertising | | | | | | | | | | | | | | - |
| Utilities | | 2,700 | | | 2,700 | | | | 2,700 | | | | 2,700 | 10,800 |
| Rent | | 6,700 | | | 6,700 | | | | 6,700 | | | | | 20,100 |
| Property taxes | | | | | | 4,320 | | | | | | | | 4,320 |
| Office/administrative Salar | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 7,481 | 97,253 |
| Payroll taxes - office | 673 | 673 | 673 | 673 | 673 | 673 | 673 | 673 | 673 | 673 | 673 | 673 | 673 | 8,753 |
| Telephone - Office | | 900 | | 900 | | 900 | | | 900 | | | | 900 | 4,500 |
| Telephone _ cellular | | 2,200 | | 2,200 | | 2,200 | | | 2,200 | | | | 2,200 | 11,000 |
| | | | | | | | | | | | | | | - |
| Travel & entertainment | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| Parking and tolls | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,950 |
| Life Insurance | | | | | | | | | 2,500 | | | | | 2,500 |
| Owner Draw | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 45,500 |
| | | | | | | | | | | | | | | |
| **Chapter 11 Administrative** | | | | | | | | | | | | | | |
| Accounting | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 5,200 |
| Legal fees | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 26,000 |
| U.S. Trustee | | | | | | | 650 | | 2,200 | | | | 2,200 | 5,050 |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | - |

13 Week Budget

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total S,G,A | | 14,704 | 27,204 | 14,704 | 17,804 | 24,104 | 22,774 | 14,704 | 16,904 | 29,704 | 14,704 | 14,704 | 16,904 | 20,504 | 249,426 |
| | | | | | | | | | | | | | | | - |
| Debt Service(1) | | | | | | | 3,793 | | | | 3,793 | | | | 7,586 |
| TD Bank Note A Payment | | | | | 5,012 | | | | 5,012 | | | | 5,012 | | 15,036 |
| | | | | | | | | | | | | | | | |
| Total Outflows | | 83,747 | 140,617 | 83,747 | 133,835 | 106,720 | 101,027 | 83,747 | 118,959 | 115,343 | 109,910 | 88,747 | 108,959 | 110,143 | 1,385,495 |
| | | | | | | | | | | | | | | | |
| Total cash flow | | 8,734 | 8,466 | 7,786 | 6,973 | 13,280 | 587 | 12,300 | 3,541 | 47,157 | 25,590 | 33,753 | 16,041 | 14,857 | 199,068 |
| | | | | | | | | | | | | | | | |
| TD Bank Ad. Pro. Payment (3) | | | | 4672 | 4184 | 7968 | 353 | 7380 | 2125 | 7250 | 7250 | 7250 | 7250 | 7250 | 62932 |

1. See Attached Exhibit
2. This reflects payment of $222,000 (Debtor reserves the right to object to claim) on the Term A Note at 4% amortized over 48 months.
3. 60% of weekly net cash flow but no greater than $7,250.00

Financed Equipment - Adequate Protection

| Due | Creditor | Item | Contract Amt | Owed | Current Value | Adequate Protection Payments |
|---|---|---|---|---|---|---|
| 1st | GECC | Volvo #38 | $1,834.67 | $41,880.00 | $52,000.00 | $945.00 |
| 6th | GECC | Bobcat 463 & Excavators 323J | $924.76 | $20,345.00 | $25,500.00 | $459.00 |
| 9th | GE Capital | 4 Bobcats (111-0302826-000) | $2,988.74 | $14,944.00 | $89,000.00 | $337.00 |
| 10th | Ford Credit | 2006 Ford Blue (040979254) | $546.31 | $8,194.00 | $18,000.00 | $185.00 |
| 11th | M&T Credit | 2007 #43 Isuzu | $925.14 | $16,025.00 | $18,000.00 | $361.00 |
| 14th | Ford Credit | Truck #39 (042840235) | $534.22 | $8,129.00 | $16,000.00 | $184.00 |
| 14th | Ford Credit | Truck #40 (042839609) | $533.79 | $8,129.00 | $16,000.00 | $184.00 |
| 14th | Ford Credit | Truck #41 (042840287) | $999.13 | $11,400.00 | $27,000.00 | $257.00 |
| 14th | Ford Credit | Truck #11 (041673358) | $942.85 | $5,657.00 | $23,000.00 | $127.00 |
| 15th | De Lage Landen | PC138 2001 Komatsu | $1,143.85 | $19,120.00 | $40,000.00 | $431.00 |
| 26th | Eastern bank | Truck #42 (9774917600001) | $651.72 | $14,338.00 | $25,000.00 | $323.00 |
| | | | Totals | $168,161.00 | $349,500.00 | $3,793.00 |
| | | | Equity | $181,339.00 | | |